Thank you, your honor. May it please the court. My name is Kevin Vanew. I'm representing Nicholas Conlan in this case. This is a case brought into the Americans with Disabilities Act, as well as Montana state statutes pertaining to disabilities. All accounts were that Nicholas Conlan was a great employee for Costco. He received great recommendations and everything seemed to be going along fairly well as far as his relationship with his employer until such time as he stated that he wanted to have a, as an accommodation, a service animal. Who's named Kenny. Five times during this process, his provider stated that Nicholas would benefit from a, the accommodation of having a service dog. And despite that, Nicholas's last day on the job was the date that he told his employers that he wanted to have that dog. He was sent home with a leave of absence that he did not ask for. He wanted to continue working. He wanted to have an accommodation. He tried other accommodations. He tried to apply for another position in the optical department. That was approved, but it was never given to him. Nicholas's primary problem was out driving on the roads, especially the winter roads in Montana. It caused him a lot of anxiety due to a, when he was younger, he had a terrible accident where he almost died. Counsel, can we interrupt and get a couple of questions? And I want, I want to assure you that we've read the brief thoroughly. And I think Judge Forrest and I both have a question. So let's hear from Judge Forrest first. Counsel, I've been struggling with your motion and limiting argument on appeal. So to start with, was it your intention or was it your client's intention to bring a separate public accommodation claim based on the incident in the tire shop when he was a customer? I believe. Your Honor, I believe that we had that right to do that. And that's under the, under the ruling court bin. So as I read the complaint, the operative complaint, you don't state a separate claim for that. We did not. Did you amend or at some point along the way, did you indicate that at trial you intended to assert that as a separate claim? We asserted that in our, our pretrial statements. And when was that? I believe it was in October. Was that the first notice that Costco had of that claim arising from those facts? No, that was also brought up before the human rights department in the state of Montana at the state level. Well, wasn't the pharmacy related claim, the one that was brought up, brought up before the human rights commission. And then I fully appreciate that, that the parties knew about the episode. But I think what Judge Forrest is going to and what I would help me is to know what was Costco's first notice that a separate claim was going to be based upon that episode. This was discussed. No, I was not party to that. I was not representing Mr. Conlin at the time, but I believe that that was stated in the proceeding at the state level before the Montana human rights commission. And they were aware of that. They waited until just after the lapse of the time for making dispositive motions. And then they motioned to exclude that from consideration at trial. When was the motion in limine filed by Costco? I mean, I could ask Costco's counsel, but if you have that handy. We don't have that handy. It was sometime after February 14th, which was the deadline for filing dispositive motions. Counsel, you argued a minute ago to shift gears here that your client would have benefited from having Teddy with him at work. Correct. I think your brief makes that argument as well. I'm trying to figure out what is your argument that that was enough to require Costco to continue with the interactive process given, as you know. He didn't have something that said that he's got this work restriction. He was released to work. So what's the best authority you've got supporting your position? Well, most of Costco's authorities were authorities based prior to the Amendments Act with the Americans with Disabilities Act. Part of that Amendments Act, it allowed for evidence showing that there was a accommodation for needed, that oftentimes it's episodic type things. And oftentimes it's where there's ameliorative processes. The Amendments Act made clear that those were a block. And the ameliorative thing was, it's like somebody who needs a prosthesis, they're missing a leg. They don't have any restrictions as long as they're wearing their prosthesis. In the same way, Nicholas was returned to work without restriction, but with a recommendation that he have an accommodation. So is it, forgive me for interrupting, but is your position that Zimmerman's statement that he had no work restrictions, do you think she had baked in that with Teddy, he doesn't have any work restrictions? Is that it? Yes, and I believe that was her statement. She said that with Teddy, he needed an accommodation. He had no restrictions, he needed an accommodation. He would benefit by accommodation. And with that, at most, it's ambiguous. But Costco had the additional thing to move this thing along, to investigate that further, to clear up any ambiguity they have, any questions that they have. They admitted in the transcript that they had questions, that there were, it was at best ambiguous. But yet they said that Nicholas should engage in the process using their third-party contractors. And when Nicholas refused to do that, according to Costco's own statement, they said that that ended the interactive process. When Nicholas refused to cooperate and to disclose his private information to these third-party people. And I believe that Costco had the obligation to take that further and to move it along. Thank you. I think you've answered my question. I want to make sure you have time for rebuttal. Do you have any other questions at this point? I'll wait for rebuttal.  Go ahead, please. I reserve two minutes and 30 seconds, Your Honor. You bet. Thank you. Good morning. May it please the Court, my name is John Crist. I'm here on behalf of Costco. Let me address the questions that the panel was raising. We filed our motion in limine on October 21st, 2021. That was two months or so before the trial when I first learned that they intended to bring this as a separate claim. How did you learn that? I learned it from talking with Mr. Vainio, oddly enough. We had an oral argument and a motion for summary judgment. And I had a bright young associate who said to me, I think they might be trying to bring this as a separate claim. And I said, they can't bring it as a separate claim. They didn't bring it before the Montana Human Rights Bureau. It's a jurisdictional prerequisite to do it. And she said, I think he's going to do it. So Mr. Vainio and I were talking about who we were going to have for witnesses. And I said, we're friends. Kevin, are you intending to bring this as a separate claim? He said, yes, I am. So I filed the motion in limine. So was there any document ever filed in the district court indicating that this would be a separate claim presented at trial? There was not. Was there any ruling by the district court that this could not be presented as a separate claim at trial? Only to the extent the motion in limine was such a ruling. What the judge did in the motion in limine is ruled that he would not allow evidence concerning the tire shop incident with respect to a separate claim. He did rule. And that's because it hadn't been exhausted and he considered that to be a jurisdictional requirement as opposed to a prudential requirement. Correct. Correct. Correct, Judge Kristen. And it is. It has been in Montana for 30 years. Under state law. Under state law. And the claim was only brought under state law. It was not brought under federal law. It's count two of the complaint. It specifically says human rights act. It's not an ADA claim. So it is only a state law claim. The other issue as to the notice, there is discussion of this tire shop incident in their preliminary pre-hearing statement. Not as a separate cause, but just as background facts. And, in fact, the evidence came in, right? I think without objection. It came in without objection because Mr. Conlin argued in response to my motion for summary judgment, and I'll read it to you. Costco's hostile treatment of Conlin with his service dog while he was a customer is very relevant to how Costco later treated Conlin and his dog, both when he was a customer and as an employee. Such evidence is highly relevant. It is not objectionable for other reasons. So what he was arguing is that it was relevant to his employment law claims. And what Judge Johnson said in his order is, I'm just going to have to see how this comes in at trial. I don't know if it's going to be relevant, if it's not going to be relevant. And since he had ruled it out as a separate claim, I didn't really care if it came in. Ultimately, what I'm struggling with on the motion on the many issue is basically so what, right? Like, the appeal is that the district court erred in the ruling on the motion in limine, but I cannot figure out on this record how the trial would have been any different had the district judge ruled differently on the motion in limine or had the motion never been filed. I think that the only thing that would have been different, Judge Forrest, is I think the judge would have made findings or, excuse me, conclusions of law with respect to this separate claim that he was attempting to bring. That would have been the only difference. So your thought is if that motion hadn't have been filed, then a separate claim would have been raised and presented at trial. Right. He would have attempted to assert it. I mean, at that point in time, learning that somebody is going to bring a new claim two months before trial, you've got a couple of options. One is the motion in limine, which seemed like the most logical thing for me to do. The other would have been to wait until trial and object to it or raise it in post-hearing motions and make the same arguments that I made in my motion in limine. It made sense to me to do it via a motion in limine so that the issue would be clear prior to the time we tried the case. Could you speak to counsel's other point about the somewhat conflicting evidence? Sure. Maybe your view is it wasn't conflicting, but there's the statements about Mr. Conlon would benefit from Teddy. Yes. I think he would benefit as opposed to, of course, then statements that he did not have work restrictions. Sure. I would call the Court's attention to two exhibits, Exhibit 506 and Exhibit 508. In 506, that's the one where the health care provider was asked to look at the various aspects of Mr. Conlon. She says employees have no restrictions in the physical and mental and physiological demands section below. The other is Exhibit 508. She begins with work restrictions for Nicholas's mental health are not limited. There is no qualification not limited because of the dog. Now, what about the would benefit from a companion animal language? The short answer to that is that the suggestion of an accommodation in the absence of a disability which results in limitations, in this case we're talking about limitations to his ability to work, does not give rise to the obligation to give an accommodation. And let me give you an example. Let's say I had a two-level fusion in my back and I've got back injuries. It interferes with major life activities. I can't fly fish. I can't play golf. I can't do this. But my job is to lift 50 pounds. I think it's funny that you think fly fishing is a major life activity. It is a major life activity. And I want to say I agree with you on that point. Go on with it. Okay, good, because it is a major life activity. I'm with you. So I go to my doctor. My job is to lift 50-pound boxes in a warehouse all day long. And I go to my doctor and the doctor says, John is released to work without restrictions, no 50-pound restriction, but John would benefit from a forklift. Well, I would probably benefit from a forklift or a handcart or a guy to help me. But because I do not have substantial limitations, restrictions in our parlance, under the ADA there is no requirement that I be given an accommodation. Opposing counsel argues, I think he cites Mr. Allen's deposition, that there was some ambiguity by at least some supervisor that had that, both statements from Zimmerman. Is that wrong? I do not recall that, Judge. I don't recall that there was any ambiguity. And they called. So my question, sorry, my question was that one supervisor thought there was. I think it's Allen. Is that what you were responding to? That was what I was responding to. And I did not recall that in Allen Arnold's testimony, Your Honor. The other thing is they called Melissa Zimmerman, the health care provider, as an expert in their case. And she never said that. She never testified. They never asked her, are you saying that he had no limitations with his dog, or are you saying it was in spite of the dog? They had every opportunity to put that evidence into trial, and they didn't do that. I see from my notes that I misquoted. It's Allen Archer, I think, is where I saw that, but that's not ringing a bell. He was confused by Zimmerman's statement. There is no Allen Archer. There's an Allen Arnold who was the general manager. Oh, maybe my handwriting is just bad. It's definitely general manager. Yep, that's what I have. You don't think so? You don't recall that? You know, Judge, I don't think so. I mean, I've reread the transcript obviously a couple times in advance of this. I'm not recalling that. Okay, fair enough. I'll try to decipher my own handwriting. Okay. I want to talk just about one last thing in the couple of minutes I've got left. There are basically two ways in which a party can get a trial judge's decision overturned. One is you show that he was clearly erroneous on the law, and the other is you show he applied the wrong law or misapplied the correct law. In this case, Mr. Conlin has made no attempt in his brief to show that even one of the district court's findings of fact was clearly erroneous. They argue about the facts, but they never go to the detail one needs to in order to dig into those facts and say the judge found X. If you look into the record, it says Y, and here's where it said that. Judge Johnston issued very detailed findings of fact. On pages 21 through 27 of our brief, I've demonstrated where all of the court's findings of fact pertaining to the key issues are fully supported in the record. No reply brief was filed, so none of that was contested. So as we sit here today, there is literally no demonstrated issue with respect to whether there was a finding of fact that was clearly erroneous. Finally, as to the law, setting aside the motion in limine issue, Mr. Conlin cites only four cases to the court. Two, one from Montana and one from the Ninth Circuit, are for the proposition that when an employee asks for an accommodation there, you have to enter into the interactive process. That's not a disputed proposition. Again, Judge Johnston made very detailed findings. That is an issue of fact for the trial court to consider, and he made very detailed findings that that occurred. The other two cases cited by Mr. Conlin are for the proposition that we had to speak directly with Nicholas Conlin and no one else. Neither of those cases say that. One is Reeves v. Dairy Queen, a Montana case, where the employer learned the employee had some medical issues and literally did nothing, didn't talk to her, just made some assumptions and fired her. The other is a Sixth Circuit case where they did all kinds of things with respect to the young man at issue, and the court ultimately determined that there were just findings of fact that pertained to a number of issues. Again, no holding that you had to speak only to the person and just to the person. So with that, I will... Hang on. I found it. And I just want to give you a chance to respond. It's Alan Arnold, his statement, the manager of the Costco warehouse in Helena, right, and at 5ER791, he says, I was involved in discussions with Margo Fincher concerning the job analysis work restrictions form, a note that we received back from Conlon. We were confused by the conflicting statements of Bentley Zimmerman, right, because there was a name change there, because she said in the work restrictions form there were no restrictions on his ability to work but suggested that he could benefit. So this is what I was inartfully trying to call your attention to. And, Judge, I'm sorry, what line were you on on 571? It's paragraph 7, 5ER791. Oh, I'm sorry. And I just wanted to give you a chance to respond to that. Thank you, Judge. I'm sorry, Judge. I'm looking at the record and I'm not finding 5ER791. Well? In the transcript. It's an affidavit of Alan Arnold. Oh, an affidavit. Okay, I'm sorry. I'm sorry, I thought we were talking about trial testimony. 5ER791. Okay. I think the response in your briefing was that Costco wasn't able to get a release. Yeah, yeah, and my apologies, Judge. I was thinking about the trial transcript when you were talking about Mr. Arnold. I think that Mr. Arnold was confused and needed to then rely upon the experts at Costco. And so he, I think, testified at trial and I think consistent with his affidavit that the managers would rely upon the experts in Costco's integrated leave department, and that's what Mr. Arnold ended up doing there. There was the option of the work care issue, and that was an option available to Mr. Conlon. He chose not to use it. Would it have made a difference here? I kind of think not at this point in time. We actually did file a motion for summary judgment arguing that he failed to cooperate in the process by not using that. We did not make that argument at trial. The judge denied that motion. You don't have much of a record of it because he simply relied on his oral statements made during oral argument. But he just didn't think it was a strong enough argument mostly because it was, admittedly, Mr. Conlon's option to use it. Now, again, would it have clarified anything? At this point, I sort of think not because, again, Bentley, the health care provider, provided numerous statements. When she went to trial, she didn't say anything different at trial than was in her statements. And so I think if there's some issue of, gosh, we should have talked to Bentley, we should have spoken to her directly. If there was some evidence that she would have said something different, surely that would have come up at trial. Okay. Thank you for your patience with my question. I appreciate it. We've taken you over time. Let me just check quickly. Any other questions? No. It looks like you're off the hook for today. Appreciate it. Thank you. Counsel, for Mr. Conlon, you have two and a half minutes left. Your Honor, Mr. Conlon is very unsophisticated, I'd say, and very keeps close to his chest his medical information. What he was asked to do was disclose that information to a third party. He didn't mind talking to his employer about it. He just didn't want to disclose that to some third party that he had no idea who they were. And it was, in fact, what Costco said, when Costco asked to have a third party accommodation consultant directly contact Bentley to clarify her contradictory statements, Conlon refused to sign the authorization. So once again, we're talking about contradictory statements. And that, in the words used by Costco, quote, that stopped the process, end quote. So Nicholas refused to sign this thing, and that was the end of it as far as Costco was concerned. Counsel, if I may interrupt, the district court made a finding that the healthcare professional found that he had no restrictions and could return to work, right? Correct. So would we review that for a clear error as a factual finding? I would review that as clear error. It's based on the old law of the thing. Under the amendments, you look at amelioratory type things and also the fact that something's episodic. You don't have these all the time, and normally you can return without restrictions. And throughout the proceedings, Costco relied upon the pre-amendment authorities. After that, they found that, you know, what the finding was under the amendments was that there was a relaxation of the need to show that these affect a substantial life activity. There's also the interjection of the terms ameliorative, process, and episodic incidents. In summary, I think that there were findings of fact that were contested. The court made errors in determining those, and with that, I'll close my argument. Looks like there are no further questions. Thank you both for your arguments. We'll take that case under advisement. Thank you, Your Honor. Thank you.
judges: CHRISTEN, LEE, FORREST